IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MARYLAND

| | |
|---|---|
| ELIZABETH ROBERTS, ) | |
| ) | |
| Plaintiff, ) | |
| ) | Civil Action No. 22-cv-02682-LKG |
| v. ) | |
| ) | Dated:  February 14, 2024 |
| CITY OF HAGERSTOWN, ) | |
| MARYLAND AND JOHN DOES 1 to 2, ) | |
| ) | |
| Defendants. ) | |

## MEMORANDUM OPINION

### I.    INTRODUCTION

This civil dispute arises from an alleged assault of Plaintiff, Elizabeth Roberts, by Defendants John Does 1 to 2, who are unidentified Hagerstown Police Department police officers (the "John Doe Defendant Officers"), on March 29, 2021. *See generally*, Second Am. Compl., ECF No. 27-2.  On June 28, 2023, Defendant, the City of Hagerstown, Maryland (the "City"), filed a motion to dismiss this matter, pursuant to Federal Rule of Civil Procedure 12(b)(6).  ECF Nos. 35, 35-1.  This motion is fully briefed.  ECF Nos. 35, 35-1 and 38.  No hearing is necessary to resolve the motion.  *See* L.R. 105.6 (D. Md. 2023).  For the reasons that follow, the Court: (1) **GRANTS** the City's motion to dismiss and (2) **DISMISSES** the second amended complaint.

### II.    FACTUAL AND PROCEDURAL BACKGROUND

#### A.    Factual Background[1]

This civil dispute arises from an alleged assault of Plaintiff by two unidentified Hagerstown Police Department police officers on March 29, 2021.  *See generally*, Second Am. Compl., ECF No. 27-2.  Plaintiff asserts the following claims in the second amended complaint:

---

[1] The facts recited in this memorandum opinion are taken from the second amended complaint and Defendant's motion to dismiss and memorandum in support thereof.  ECF Nos. 27-2; 35, 35-1.

(1) Intentional Infliction of Emotional Distress (Count I); (2) Assault and Battery (Count II); (3) Violations of First, Fourth and Fourteenth Amendments/Section 1983 (Count III); and (4) Municipal Liability and Individual Liability (Count IV). *Id.* at ¶¶ 18-35. As relief, Plaintiff seeks certain injunctive relief and to recover monetary damages, attorney's fees and costs from the Defendants. *Id*. at Prayer for Relief.

<u>The March 29, 2021, Incident</u>

On March 29, 2021, Plaintiff visited the Baymont Hotel to meet two friends who were staying at the hotel. ECF No. 27-2 at ¶ 7. Plaintiff alleges that, while she was waiting for her friends to return to the hotel, she stopped at the adjacent diner to purchase food and then went to the third floor of the hotel to eat her food near the hotel's fire escape. *Id.* at ¶¶ 7-8. Plaintiff further alleges that the John Doe Defendant Officers approached her and questioned her while she was eating and told her she could not be there. *Id.* at ¶ 8.

Plaintiff maintains that an altercation between herself and the John Doe Defendant Officers then ensued. In this regard, Plaintiff alleges that she asked the John Doe Defendant Officers if she needed to leave, and that after she took one or two steps, one of the officers yelled at her to stop. *Id.* Plaintiff alleges that she then turned around, and the same officer grabbed her food and threw it on the ground, while the other officer threw her purse down the hall. *Id.*

Plaintiff also alleges that one of the John Doe Defendant Officers grabbed her arm, which had recently been broken, twisted the arm behind her back, causing excruciating pain, and then pulled Plaintiff toward the elevator. *Id.* Plaintiff alleges that the John Doe Defendant Officers put her in the elevator and continued to assault her without explanation until the elevator doors opened at the lobby, whereupon the John Doe Defendant Officers threw her on the ground and one of the John Doe Defendant Officers handcuffed her left arm. *Id.*

Plaintiff contends that the second John Doe Defendant Officer unsuccessfully attempted to handcuff her right arm, and then the first John Doe Defendant Officer attempted to handcuff her, thereby applying more pressure to Plaintiff's right arm and causing her pain. *Id.* Plaintiff also contends that she continued to scream at this time, and that the first John Doe Defendant Officer then put his knee on her neck, causing her to have difficulty breathing. *Id.* at ¶ 9. And so, Plaintiff alleges that she screamed "I can't breathe, I can't breathe," and then lost consciousness. *Id.*

Plaintiff also alleges that, when she regained consciousness, she was in a different location, where a medical professional intubated her without anesthetic, and where she was unable to move and scared for her life. *Id.* Lastly, Plaintiff alleges that she again lost consciousness and subsequently woke up in the hospital, heavily sedated and without knowledge of where she was or what occurred. *Id.*

It is undisputed that Plaintiff was not arrested, charged, or cited in connection with this incident. *Id.*; Def. Mot., ECF No. 35-1 at 3.

### B.    Procedural Background

Plaintiff commenced this civil action on October 18, 2022. *See generally* Compl., ECF No. 1. Plaintiff subsequently amended the complaint on November 25, 2022, and June 15, 2023, respectively. ECF Nos. 21, 32, and 34.

On June 28, 2023, the City filed a motion to dismiss the second amended complaint, pursuant to Federal Rule of Civil Procedure 12(b)(6). ECF Nos. 35; 35-1. Plaintiff filed a response in opposition to the City's motion on August 8, 2023. ECF No. 38.

## III.    LEGAL STANDARDS

### A.   Rule 12(b)(6)

To survive a motion to dismiss pursuant to Federal Rule of Civil Procedure 12(b)(6), a complaint must allege enough facts to state a plausible claim for relief. *Ashcroft v. Iqbal,* 556 U.S. 662, 678 (2009) (citing *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 570 (2007)). A claim is plausible when "the plaintiff pleads factual content that allows the Court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Id.* (citing *Twombly*, 550 U.S. at 556). When evaluating the sufficiency of a plaintiff's claims under Fed. R. Civ. P. 12(b)(6), the Court accepts factual allegations in the complaint as true and construes them in the light most favorable to the plaintiff. *Nemet Chevrolet, Inc. v. Consumeraffairs.com, Inc.*, 591 F.3d 250, 253 (4th Cir. 2009); *Lambeth v. Bd. of Comm'rs of Davidson Cty.*, 407 F.3d 266, 268 (4th Cir. 2005) (citations omitted). But, the complaint must contain more than "legal conclusions, elements of a cause of action, and bare assertions devoid of further factual enhancement." *Nemet Chevrolet*, 591 F.3d at 255. And so, the Court should grant a motion to dismiss for failure to state a claim if "it is clear that no relief could be granted under any set of

facts that could be proved consistent with the allegations." *GE Inv. Private Placement Partners II, L.P. v. Parker,* 247 F.3d 543, 548 (4th Cir. 2001) (quoting *H.J. Inc. v. Nw. Bell Tel. Co.,* 492 U.S. 229, 249-50 (1989)).

### B. Section 1983 And *Monell* Claims

Title 42, United States Code, section 1983 provides a mechanism for individuals who have had their constitutional rights violated to seek a remedy against individual state actors. *See* 42 U.S.C. § 1983 (providing that if any person acting "under color of any statute, ordinance, regulation, custom, or usage, of any State" deprives a United States citizen of any constitutional right, that person may be liable in a suit for money damages). Section 1983 permits a plaintiff to bring a claim directly against a municipality if the municipality causes a deprivation of a constitutional right through an official policy or custom. *See Monell v. Dep't of Soc. Servs.*, 436 U.S. 658, 690 (1978).

However, "a municipality can be found liable under § 1983 only where the municipality itself causes the constitutional violation at issue." *City of Canton v. Harris*, 489 U.S. 378, 385 (1989) (emphasis in original). Given this, a local government "may not be sued under § 1983 for an injury inflicted solely by its employees or agents." *Monell*, 436 U.S. at 694. Further, there is no *respondeat superior* liability for § 1983 claims. *Id.* at 691. And so, the Supreme Court has held that a municipality may be liable under § 1983 "when a municipality's policy or custom has caused the violation of an individual's federal rights." *Gonzaga Univ. v. Doe*, 536 U.S. 273, 296 (2002) (Stevens, J., dissenting).

A *Monell* plaintiff need only meet the basic "short and plain statement" requirement of Fed. R. Civ. P. 8(a) in the complaint. *Leatherman v. Tarrant Cty. Narcotics Intelligence & Coordination Unit*, 507 U.S. 163, 168-69 (1993). But, the United States Court of Appeals for the Fourth Circuit has held that a *Monell* plaintiff must adequately plead "the existence of an official policy or custom that is fairly attributable to the municipality and that proximately caused the deprivation of their rights." *Jordan ex rel. Jordan v. Jackson*, 15 F.3d 333, 338 (4th Cir. 1994). A "threadbare recital of the elements of a cause of action, supported by mere conclusory statements" is also insufficient to plead a plausible *Monell* claim. *Cook v. Howard*, 484 F. App'x. 805, 811 (4th Cir. 2012) *cert. denied*, 133 S. Ct. 1600 (2013) (internal citations omitted). The Fourth Circuit has also held that "a municipal policy or custom giving rise to § 1983 liability will not be inferred merely from municipal inaction in the face of isolated constitutional

4

deprivations by municipal employees." *Milligan v. City of Newport News*, 743 F.2d 227, 230 (4th Cir. 1984). And so, the municipality's conduct must demonstrate "deliberate indifference to the rights of potentially affected citizens," in order for conduct to be properly thought of as a "policy." *Jones v. Wellham*, 104 F.3d 620, 626 (4th Cir. 1997).

In this regard, the Fourth Circuit has held that a plaintiff can demonstrate the existence of a policy or custom for which a municipality may be liable in four ways: "(1) through an express policy, such as a written ordinance or regulation; (2) through the decisions of a person with final policymaking authority; (3) through an omission, such as a failure to properly train officers, that manifest[s] deliberate indifference to the rights of citizens; or (4) through a practice that is so 'persistent and widespread' as to constitute a custom or usage with the force of law." *Lytle v. Doyle*, 326 F.3d 463, 471 (4th Cir. 2003) (citation omitted) (brackets in original). This Court has also held that "[a] plaintiff must allege numerous particular instances of unconstitutional conduct in order to establish a custom or practice, because 'a municipality is not liable for mere isolated incidents of unconstitutional conduct by subordinate employees.'" *Weeden v. Prince George's Cnty.*, No. 17-2013, 2018 WL 2694441, at *4 (D. Md. June 4, 2018) (quoting *Smith v. Ray*, 409 F. App'x. 641, 651 (4th Cir. 2011); *see also Talley v. Anne Arundel Cnty.*, No. 21-347, 2021 WL 4244759, at *14 (D. Md. Sept. 17, 2021) ("Alleging such a [persistent and widespread] practice requires a plaintiff to plead prior instances of similar conduct."). Lastly, relevant to this dispute, this Court has held that, "when alleging an inadequate training policy, a complaint should contain facts revealing: (1) the nature of the training, (2) that the training was a 'deliberate or conscious' choice by the municipality, and (3) that the officer's conduct resulted from said training." *Jones v. Chapman*, No. CIV.A. ELH-14-2627, 2015 WL 4509871 (D. Md. July 24, 2015) (internal citations omitted).

    C. **Governmental Immunity**

"The doctrine of sovereign immunity from suit . . . is firmly embedded in the law of Maryland." *Katz v. Wash. Suburban Sanitary Com'n*, 284 Md. 503, 507 (1979). Given this, Maryland courts have held that "'[g]overnmental immunity'. . . is not only applicable to the State itself, but also applies generally to a county of the State and to the State's municipal political subdivisions and local agencies, unless the General Assembly either directly or by necessary implication has waived the immunity." *Austin v. City of Baltimore*, 286 Md. 51, 53 (1979) (citing *Godwin v. Cnty. Comm'rs*, 256 Md. 326, 334 (1970)).

Governmental immunity is, however, limited for local governmental entities, such as counties, municipalities and local agencies. *Id.* at 53. "A local governmental entity is liable for its torts if the tortious conduct occurs while the entity is acting in a private or proprietary capacity, but, unless its immunity is legislatively waived, it is immune from liability for tortious conduct committed while the entity is acting in a governmental capacity." *DiPino v. Davis*, 354 Md. 18, 47, 729 A.2d 354, 369-70 (1999). Relevant here, this Court has recognized that the operation of a police force is a governmental function under Maryland law. *Williams v. Prince George's County*, 157 F.Supp.2d 596, 604 (citing *Hector v. Weglein*, 558 F. Supp. 194, 206 (1982)). In addition, local governmental entities have *respondeat superior* liability for the tortious conduct of their employees *only* when those employees are "acting in a *private* or *proprietary* context" under Maryland law. *DiPino*, 354 Md. at 47-48, 729 A.2d at 370 (emphasis added).

### D.  Relevant Maryland Tort Law

Maryland law also recognizes the tort of intentional infliction of emotional distress. *Harris v. Jones*, 281 Md. 560, 566, 380 A.2d 611, 614 (Md. 1977). To prevail on a claim for intentional infliction of emotional distress, a Plaintiff must show that: (1) the conduct in question was intentional or reckless; (2) the conduct was extreme and outrageous; (3) there was a causal connection between conduct and emotional distress; and (4) emotional distress was severe. *Arbabi v. Fred Meyers, Inc.*, 205 F. Supp. 2d 462 (2002) (citing *Harris v Jones*, 281 Md. 560, 380 A.2d 611 (1977)).

Under Maryland law, the civil tort of assault is defined as "any intentional, unlawful attempt to cause a harmful or offensive contact with the person of another or to cause an apprehension of such a contact." *Cont'l Cas. Co. v. Mirabile*, 52 Md. App. 387, 399, 449 A.2d 1176, 1183 (1982). In addition, the tort of battery is defined as "an offensive, non-consensual touching—the 'unlawful application of force to the person of another.'" *Robinson v. Prince George's Cnty.*, Civ. No. PJM–09–181, 2011 WL 1743263, at *6 (D. Md. May 6, 2011) (internal citation omitted)), *aff'd*, 465 F. App'x. 238 (4th Cir. 2012).

### E.  John Doe Parties

Lastly, Maryland law does not "authorize John Doe pleadings and then the subsequent substitution of the person's true name when discovered." *Nam v. Montgomery Cnty.*, 127 Md.

6

App. 172, 185 (1999). This Court has also held that "[w]hen only unserved defendants remain in a [federal] case, a court may enter final judgment 'since there is no basis . . . for holding the dismissals subject to revision.'" *Whitehead v. Viacom*, 233 F. Supp. 2d 715, 725, n.13 (D. Md. 2002) (quoting *W. Cap. Design, LLC v. New York Mercantile Exch., et al.*, 180 F. Supp. 2d 438, 443 (S.D.N.Y. 2001) and citing *Lacey v. Cessna Aircraft Co.*, 862 F.2d 38, 39, n.1 (3rd Cir. 1988) (holding that fictitious defendants who have never been identified or served with a copy of the complaint are not parties within the meaning of Federal Rule of Civil Procedure 54(b))).

**IV.    ANALYSIS**

The City has moved to dismiss this matter, pursuant to Fed. R. Civ. P. 12(b)(6), upon the following four grounds: (1) Plaintiff fails to state plausible state common law tort claims against the City in Counts I and II of the second amended complaint, because Maryland law grants the City "absolute governmental immunity" for tortious actions committed when the City is engaged in a governmental function; (2) Plaintiff fails to state a plausible *Monell* claim against the City in Count III of the second amended complaint, because the second amended complaint lacks sufficient factual allegations to establish the elements of a *Monell* "failure to train" claim; (3) Plaintiff similarly fails to state a cognizable claim against the City for "municipal liability" in Count IV of the second amended complaint, because Plaintiff does not cite to any common law or Maryland constitutional provision that would create liability under the doctrine of "municipal liability;" and (4) Plaintiff also fails to state plausible claims against the John Doe Defendant Officers in Counts I-IV of the second amended complaint, because Plaintiff cannot proceed solely against the John Doe Defendant Officers if the City is dismissed from this action and Maryland law does not permit the assertion of claims against unnamed John Doe defendants. ECF No. 35-1 at 3-7. And so, the City requests that the Court dismiss this matter. *Id*.

Plaintiff does not address the City's argument that she cannot proceed with her claims against the John Doe Defendant Officers, if the claims against the City are dismissed in this civil action. *See generally* ECF No. 38. But, Plaintiff counters in her response in opposition to the City's motion that dismissal of this matter is unwarranted, because: (1) the City is not entitled to governmental immunity from the tort claims asserted in the second amended complaint and (2) the second amended complaint contains sufficient factual allegations to state a *Monell* claim,

based upon failure to train under § 1983. ECF No. 38 at 2-3. And so, Plaintiff requests that the Court deny the City's motion to dismiss.[2] *Id.*

For the reasons that follow, a careful reading of the second amended complaint shows that Plaintiff fails to state plausible state common law tort claims against the City in Counts I and II of the second amended complaint, because the City has governmental immunity from these claims. The second amended complaint also makes clear that Plaintiff fails to state a plausible *Monell* claim, based upon the failure to train, in Count III of the second amended complaint, because the second amended complaint lacks sufficient factual allegations to support the elements of this claim. The second amended complaint similarly lacks sufficient factual allegations to state a plausible claim against the City for the "municipal liability" in Count IV of the second amended complaint, because Plaintiff provides no legal bases for this claim. Lastly, Plaintiff cannot pursue her claims against the unnamed John Doe Defendant Officers, if the City is dismissed from this matter. And so, the Court: (1) **GRANTS** the City's motion to dismiss and (2) **DISMISSES** this matter, pursuant to Fed. R. Civ. P. 12(b)(6).

      A.     **Plaintiff Fails To State Tort Claims Against The City**

As an initial matter, the City persuasively argues that Plaintiff fails to state plausible state common law tort claims against it in this matter, because the City has governmental immunity from suits arising from the tortious actions of its police officers while engaged in a governmental function. Under Maryland law, local government entities, like the City, have immunity from suit for common law tort claims arising from tortious actions committed while the local government entity was acting in a "governmental" capacity. *DiPino v. Davis*, 354 Md. 18, 47, 729 A.2d 354, 369-70 (1999). In this regard, Maryland courts have recognized that the operation of a police force is "quintessentially governmental." *Clark v. Prince George's Cnty.*, 211 Md. App. 548, 558, 65 A.3d 785, 791 (2013). And so, the City is immune from suit based upon the alleged

---

[2] In the alternative, Plaintiff requests that the Court allow her to further amend the complaint once she identifies the John Doe Defendant Officers. ECF No. 38 at 3. But, Plaintiff's proposed amendment would be futile, because amending the complaint once she discovers the names of the John Doe Defendant Officers is prohibited under Maryland law. *Nam v. Montgomery Cnty.*, 127 Md. App. 172, 185 (1999).

tortious conduct of the John Doe Defendant Officers, if this conduct occurred while the officers were engaged in conduct related to the operation of the City's police force.

In Counts I and II of the second amended complaint, Plaintiff asserts claims under Maryland law for intentional infliction of emotional distress and assault and battery arising from her encounter with the John Doe Defendant Officers during the March 29, 2021, Incident. ECF No. 27-2 at ¶¶ 18-23 (alleging that the Defendants acted intentionally, "by subjecting [her] to the vicious, violent humiliating beating" which was "conduct that was extreme and outrageous" and that Defendants "assaulted and battered [Plaintiff] without justification."). The second amended complaint makes clear that this alleged tortious conduct occurred while the John Doe Defendant Officers were carrying out their official duties as police officers for the City. *Id*. at ¶¶ 8, 23 (alleging that the John Doe Defendant Officers approached and questioned Plaintiff and that the officers were acting under the authority of the City as officers of the Hagerstown Police Department).

Given this, the Court agrees with the City that Plaintiff fails to state plausible state common law tort claims against the City, because the City has governmental immunity from suits arising from torts committed by its police officers while acting in a "governmental" capacity. And so, the Court **DISMISSES** the state common law tort claims asserted against the City in Counts I and II of the second amended complaint, pursuant to Fed. R. Civ. P. 12(b)(6).

**B. Plaintiff Fails To State A Plausible *Monell* "Failure To Train" Claim**

A careful reading of the second amended complaint also shows that Plaintiff fails to state a plausible *Monell* claim against the City based upon the failure to adequately train its police officers. As this Court has held, "when alleging an inadequate training policy, a complaint should contain facts revealing: (1) the nature of the training, (2) that the training was a 'deliberate or conscious' choice by the municipality, and (3) that the officer's conduct resulted from said training," to establish liability under § 1983. *Jones v. Chapman,* No. CIV.A. ELH-14-2627, 2015 WL 4509871 (D. Md. July 24, 2015) (internal citations omitted). The Fourth Circuit has also held that a "threadbare recital of the elements of a cause of action, supported by mere conclusory statements" is insufficient to plead a plausible *Monell* claim. *Cook v. Howard*, 484 F. App'x. 805, 811 (4th Cir. 2012), *cert. denied*, 133 S. Ct. 1600 (2013) (internal citations omitted). And so, to state a plausible *Monell* claim here, Plaintiff must allege sufficient facts in the second amended complaint to show: (1) the nature of the training provided by the City; (2) the City's

9

"deliberate or conscious" choice regarding the training; and (3) how the alleged officer conduct resulted from the provided training. *Jones*, 2015 WL 4509871 at *18.

Plaintiff has not satisfied this requirement. In the second amended complaint, Plaintiff alleges that the City failed to adequately train its officers in: (1) how to handle a person experiencing a mental health crisis; (2) how to remove a person from a location; (3) and how not to racially profile a person. ECF No. 27-2 at ¶ 12. Plaintiff also alleges that the City's failure to train deprived her of constitutional rights guaranteed by, among other things, the First and Fourth Amendments. *Id*. at ¶¶ 24-30.

But the second amended complaint is devoid of any factual allegations about the nature of the training that the City provided. *See generally* ECF No. 27-2. While the second amended complaint does allege that the City "made a deliberate and conscious choice not to implement an adequate training program[,]" the second amended complaint also contains no facts to support this conclusory allegation. *Id.* at ¶ 12. When construed in the light most favorable to Plaintiff, the second amended complaint similarly lacks factual allegations to show how the John Doe Defendant Officers' conduct in this case was the result of the alleged lack of training. *See generally*, ECF No. 27-2. Given this, the second amended complaint simply lacks sufficient factual detail to plausibly state a *Monell* failure to train claim against the City. And so, the Court must also **DISMISS** this claim.

### C. Plaintiff Fails To State A Claim For "Municipal Liability"

Plaintiff's "municipal liability" claim against the City in Count IV of the second amended complaint is also problematic. In the second amended complaint, Plaintiff alleges a "[v]iolation of the common law and Constitution of the State of Maryland" for which there is "municipal liability" as to the City and "individual liability" as to the John Doe Officer Defendants. ECF No. 27-2 at ¶¶ 31-35. But Plaintiff identifies no constitutional or statutory authority as the legal bases for this claim. *Id*. at ¶¶ 31-35.[3] Given this, Plaintiff fails to state a plausible claim against

---

[3] To the extent that Plaintiff is asserting a claim against the City based upon *respondeat superior* liability, there is no such liability for either the state common law tort or *Monell* claims in this action. *See DiPino v. Davis*, 354 Md. 18, 47-48, 729 A.2d 354, 369-70 (1999) (holding that: (1) *respondeat superior* liability does not exist for local government entities for the actions of their employees when those employees are acting in a governmental capacity, and (2) the conduct of police officers who are "purporting to enforce the State criminal law[,]" is "quintessentially governmental in nature."); *Monell v. Dep't of Soc. Servs.*, 436 U.S. 658, 691 (1978) ("In particular, we conclude that a municipality cannot be held liable solely because it employs a tortfeasor—or, in other words, a municipality cannot be held liable under § 1983 on a *respondeat superior* theory.").

the City in Count IV of the second amended complaint.  And so, the Court also **DISMISSES** this claim, pursuant to Fed. R. Civ. P. 12(b)(6).

### D. Plaintiff Cannot Proceed Against The John Doe Defendant Officers

As a final matter, the City also persuasively argues that Plaintiff cannot proceed with her claims against the unnamed John Doe Defendant Officers, should the Court decide to dismiss her state common law and *Monell* claims against the City.  This Court has held that federal cases cannot proceed against only "unnamed, unserved defendants[.]" *Whitehead v. Viacom*, 233 F. Supp. 2d 715, 725 (D. Md. 2002) (emphasis added).  That is precisely the circumstance presented here.

The Court has determined that Plaintiff fails to state any plausible claims against the City in this matter.  And so, the only remaining claims in this case are claims against the unnamed and unserved John Doe Defendant Officers.  ECF No. 27-2 at ¶¶ 5, 10; Def. Mot., ECF No. 35-1 at 1, 7.  Given this, the Court must also **DISMISS** Plaintiff's claims against the John Doe Defendant Officers, pursuant to Fed. R. Civ. P. 12(b)(6).

### V. CONCLUSION

In sum, a careful reading of the second amended complaint shows that Plaintiff fails to state plausible state common law tort claims against the City in Counts I and II of the second amended complaint, because the City has governmental immunity from these claims.  The second amended complaint also makes clear that Plaintiff fails to state a plausible *Monell* claim, based upon the failure to train, in Count III of the second amended complaint, because the second amended complaint lacks sufficient factual allegations to support the elements of this claim.  The second amended complaint similarly lacks sufficient factual allegations to state a plausible claim against the City for "municipal liability," because Plaintiff provides no legal bases for this claim.  Lastly, Plaintiff cannot pursue her claims against the unnamed John Doe Defendant Officers, if the City is dismissed from this matter.

And so, for the foregoing reasons, the Court:

(1) **GRANTS** the City of Hagerstown, Maryland's motion to dismiss; and

(2) **DISMISSES** the second amended complaint.

A separate Order shall issue.

s/Lydia Kay Griggsby<br>
LYDIA KAY GRIGGSBY<br>
United States District Judge